**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| LATRIS JOLLA, CARLIYAH BRACKEN, STEVEN RHODES, on behalf of himself and his minor children, and KAELYN FRANKLIN on behalf of herself and her minor children, individually and on behalf of all others similarly situated, | |
| | Case No. 3:23-cv-01370-SDD-EWD |
| Plaintiffs, | |
| ACADIA HEALTH, LLC d/b/a JUST KIDS DENTAL, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF <u>ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS</u>**

## I.    INTRODUCTION

On April 8, 2025, this Court preliminarily approved a proposed class action settlement between Plaintiffs Latris Jolla, Carliyah Bracken, Steven Rhodes, and Kaelyn Franklin, individually and on behalf of all others similarly situated ("Plaintiffs"), and Defendant Acadia Health, LLC d/b/a Just Kids Dental ("JKD" or "Defendant") and authorized the implementation of the notice plan described in the preliminary approval motion and settlement agreement. ECF No. 71.

Class Counsel now moves for final approval of the settlement agreement ("Settlement Agreement" or "SA"). As outlined by this Court in its Preliminary Approval Order, the "settlement is fair, reasonable, and adequate." *Id.* Nothing has changed since that Order to negate this finding. Notice has been disseminated in accordance with the Order, and the Class's response has been overwhelmingly (if not unanimously) supportive of the settlement, with ***no objections or opt-outs***. The combination of direct mail notice and direct email notice was preliminarily approved as the best practicable under the circumstances and obtained a reach of 88.4% of the Settlement Class. This meets any due process concerns and far exceeds the Federal Judicial Guideline of 70%. *See Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 906 (8th Cir. 2018) (reach of 73.7%, or possibly as low as 49% of class members, satisfies due process).

Accordingly, this Court should grant final approval—including of Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Expenses, and Service Awards (ECF No. 72)—for the reasons stated in this Memorandum and because there is no valid opposition to the settlement or the requested attorneys' fees, costs and expenses, and service awards.

II.    **CASE SUMMARY**

A.    **Factual Background**

Defendant, based in Baton Rouge, Louisiana, has three dental health care locations and serves more than 100,000 patients, including minor children. On or about August 2023, an unknown and unauthorized criminal actor gained access to JKD's computer system and accessed certain files containing sensitive personal information of approximately 129,463 adults and minors, including names, addresses, emails, phone numbers, birth dates, Social Security numbers, driver's license numbers, health insurance policy information, treatment information, and health conditions. Joint Declaration of Class Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Decl."), ECF No. 70-3 ¶ 2. Of these affected individuals, approximately 14,645 had their Social Security numbers impacted.

B.    **The Litigation**

On September 26, 2023, Plaintiffs Latris Jolla and Carliyah Bracken filed the first complaint. On October 16, 2023, Plaintiff Steven Rhodes filed a related action. On November 8, 2023, the Court consolidated the actions (ECF No. 22) and on January 4, 2024, Plaintiffs filed a Second Amended Complaint adding all four named Plaintiffs, asserting causes of action for: (1) Negligence; (2) Negligence *Per Se*; (3) Breach of Implied Contract; (4) Breach of Fiduciary Duty; (5) Unjust Enrichment; and (6) Declaratory Judgment (ECF No. 32 ¶ 20). Plaintiffs sought injunctive and equitable relief, an award of compensatory, statutory, nominal and punitive damages, reasonable fees and costs allowable by law, and any such further relief that the Court deems proper. *Id*. ¶ 21. Following briefing on Defendant's Motion to Dismiss (ECF No. 39, 46–47) and an initial exchange of formal discovery, counsel for the Parties began to exchange

information and discuss early resolution rather than committing to protracted litigation (ECF No. 70-3 ¶¶ 6–8).

### C.    Mediation and Settlement

To further facilitate settlement negotiations, the Parties agreed to mediate Plaintiffs' claims and those of the Class with respected mediator Hon. Morton Denlow (Ret.) of JAMS. *Id*. In preparation for mediation, the Parties prepared and produced mediation statements outlining their respective positions. *Id*. ¶ 13. As a result of the Parties' good-faith efforts, the mediation was ultimately successful, and resulted in an agreement in-principle, at which time the Parties began drafting, negotiating and finalizing the Settlement Agreement, Notices, and Claim Form accompanying this Motion. *Id*. ¶¶ 16–17. The Settlement Agreement was finalized and executed on March 27, 2025. *See* SA.

### D.    Settlement Classes and Benefits

The Settlement Agreement provides significant monetary relief. Defendant established a non-reversionary Settlement Fund of $875,000.00 to cover five separate tiers of class relief, attorneys' fees and costs, Plaintiffs' Service Awards (subject to Court approval), and the costs of settlement administration. ECF No. 70-3 ¶¶ 18–19. The Settlement provides for relief for the approximate 129,463 Members of the Settlement Class and the Subclasses as follows:

> **Settlement Class**: All persons whose Private Information was compromised as a result of the Data Breach discovered by Acadia Health, LLC d/b/a Just Kids Dental in August 2023 including all those to whom Defendant provided notice in or about September 2023. SA ¶ 60.

> **Minor Subclass**: Settlement Class Members who were minors at the time of the Data Incident. There are estimated to be 50,476 members of the Minor Subclass. *Id.* ¶ 40.

> **Adult Subclass**: Settlement Class Members who are not a member of the Minor Subclass. There are estimated to be 78,987 members of the Adult Subclass. *Id.* ¶ 17.

> **SSN Subclass**: Settlement Class Members whose Social Security numbers were potentially compromised during the Data Incident. There are estimated to be 14,645 members of the SSN Subclass. *Id.* ¶ 67.

Excluded from the Settlement Class are: (1) the Judge presiding over this Litigation, and members of his direct family; (2) the Defendant and its current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id.* ¶ 60.

The five separate tiers of relief created by the Settlement provide that: (1) Minor Subclass Members automatically receive up to 10 years of Cy Ex's Minor Defense Pro product; (2) SSN Subclass Members may claim two years of three-bureau credit monitoring and identity protection services, to include $1 million in identity fraud insurance; (3) Adult Subclass Members may claim reimbursement for documented ordinary losses up to $2,500; (4) SSN Subclass Members may claim up to $10,000 in documented extraordinary losses; (5) Adult Subclass Members may alternatively claim *Pro Rata* Cash Payments, with SSN Subclass Members receiving 3x the amount of other Adult Subclass Members. *Id.* ¶ 78.

### E.    Preliminary Approval and Notice

On April 8, 2025, this Court entered an Order granting preliminary approval of the Settlement. ECF No. 71. The Court, upon preliminary review, found the Settlement Agreement "as being fair, reasonable and adequate to the Settlement Class." *Id*. ¶ 4. The Court preliminarily appointed Plaintiffs Latris Jolla, Carliyah Bracken, Steven Rhodes, and Kaelyn Franklin as Class Representatives for the Settlement Class, and appointed Danielle L. Perry of Mason LLP and Tyler J. Bean of Siri & Glimstad LLP as Class Counsel. *Id*. ¶ 3. The Court also approved the form and content of notice—which states the amount of fees and service awards that will be requested—and approved the plan for disseminating notice to the Settlement Class. *Id*. ¶¶ 6–7.

Beginning on May 8, 2025, Court-approved notice was sent to the Settlement Class by Simpluris. *See* Declaration of Christopher Leung of Settlement Administrator Simpluris, Inc. Regarding Notice and Administration ("Simpluris Decl.") ¶ 5, attached as Ex. A. Class Members had until June 9, 2025, to file objections or to opt-out of the Settlement. As of July 26, 2025, there have been no requests for exclusion and no objections. *See id.* ¶¶ 12–15.

## III.     THE NOTICE AND CLAIMS PROCESS

The notice and claims processes were implemented pursuant to the Court's Preliminary Approval Order, as follows:

### A.     Class Notice

On April 10, 2025, Counsel for Defendant provided Simpluris with a data file containing 129,463 known Settlement Class Member names, mailing addresses and email addresses. After performing standard data hygiene, deduplication analysis and skip-tracing, the final class list was confirmed to contain 129,463 unique records of Settlement Class Members. Of these 129,463 unique records of Settlement Class Members, Simpluris identified 48,391 valid email addresses. *Id.* ¶ 4.

Beginning on May 8, 2025, Direct mailed notice was sent to all 129,463 identified Settlement Class Members, with multiple rounds of address updating and remailing to maximize delivery. Following all notice re-mailings, Simpluris has reason to believe that notices likely reached 114,420 of the 129,463 recipients, which equates to a reach rate for direct mail of approximately 88.4%. *Id.* ¶ 9. This reach rate is consistent with other court-approved, best practicable notice programs. *Id.*

Beginning on May 8, 2025, Simpluris also caused the Email Notice to be sent to the 23,029 valid email addresses for the Adult Subclass Members and to the 25,362 valid email addresses for

the Minor Subclass Members. Of the 48,391 emails sent, 47,578 were successfully delivered (less than one thousand were unsuccessfully delivered). *Id*. ¶¶ 10–11.

### B.    Case Specific Website and Hotline

On May 8, 2025, Simpluris published a dedicated website at www.jkddatasettlement.com (the "Settlement Website"). The Settlement Website contains a summary of the Settlement; important dates and deadlines, answers to frequently asked questions, information on how to contact the Claims Administrator, and downloadable versions of the Settlement documents, Long Form Notice, Postcard Notice, and the Claim Form. As of July 16, 2025, there have been 12,099 total pages views and 2,295 unique visitors to the website. *Id*. ¶ 12.

A Settlement-specific toll-free telephone number was included in the notice and on the website. The system is accessible 24 hours a day, seven days a week, and will remain in operation throughout the settlement administration. The toll-free telephone number included in the notice and on the website is 1-833-296-0947. This telephone number is active and has been available to the public since May 8, 2025. As of July 16, 2025, Simpluris has received 666 telephone calls to the toll-free line. *Id*. ¶ 13.

### C.    Claim Form Submissions

Through the notice process, Class Members were given the means to make a claim, request exclusion, or object to the Settlement. These claim forms are still subject to final audits, including the full assessment of each claim's validity and a review for duplicate submissions. *Id*. ¶ 14. Class Counsel will provide a final summary of claims submissions at the final approval hearing.

D.    **Class Response**

As of July 7, 2025, the deadline for submitting objections or requesting exclusion, Simpluris has received no requests for exclusion and no objections to the Settlement. *Id*. ¶¶ 15–18.

## IV.    LEGAL STANDARD

The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

(2)    ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria, which preceded the Rule 23 factors, are also relevant. In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty.*, No. CV H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019); *see Hays v. Eaton Grp. Att'ys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019); *see also* Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

"When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003); *see also In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930–31 (E.D. La. 2012) ("Because the public interest

strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate.); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement," "the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

Here, nothing "has occurred that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL 4935978, at *3 (W.D. Tex. Aug. 26, 2021). In fact, the response of the Class Members to the Settlement (not one request for exclusion or objection out of a class of 129,463 Settlement Class members) further underscores that the Settlement is, in fact, fair, reasonable, and adequate. For these reasons, and for the additional reasons Class Counsel will show the Court below, the Court should grant the instant motion seeking final approval of this Settlement.

## V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE PURSUANT TO RULE 23(E) AND THE FIFTH CIRCUIT *REED* FACTORS.

The Settlement in this action is fair, reasonable, and adequate under both the Rule 23(e) factors and the Fifth Circuit's *Reed* factors, and the Court should finally approve the Settlement.

### A.     Plaintiffs and Class Counsel Have Provided First-Rate Representation to the Settlement Classes.

Plaintiffs and Class Counsel have provided excellent representation for the Settlement Classes and satisfy the adequacy of representation factor under Rule 23(e)(2)(A). Plaintiffs have no conflicts of interest with other Class Members, are subject to no unique defenses, and they and their counsel have vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Class. ECF No. 70-3 ¶¶ 21, 24–25. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *Id.* ¶ 10; *see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). Class Counsel also conducted a thorough investigation of the facts both before and during the course of the Litigation. *Id.* ¶¶ 9–16. This investigation allowed Class Counsel to better understand the key factual issues at the core of the Litigation in negotiating the Settlement, *i.e.*, they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

Having completed their investigation and given the risks of no recovery at all, Class Counsel, together with Plaintiffs, settled this Litigation on a favorable basis to the Class without unduly prolonging it and without the expense and risk of a trial and any subsequent appeals.

Accordingly, Plaintiffs and Class Counsel have adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A).

**B.     The Settlement Was the Result of Arm's-Length Negotiations and Without Fraud or Collusion.**

The Settlement should be approved under Rule 23(e)(2)(B) and the first *Reed* factor. As previously stated, before filing their respective Complaints, Class Counsel investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information about the Data Breach and its potential impact on consumers. *Id.* ¶¶ 9–16. Thus, Class Counsel's appreciation of the merits of this case prior to settlement, and their extensive experience in litigating other class cases in this area of the law throughout the country, allowed them to engage in vigorous, arms-length negotiations with Defendant JKD. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The parties engaged in extensive arm's-length negotiations overseen by experienced mediator Judge Denlow. In anticipation of the mediation, Defendant provided information to Class Counsel related to the merits of Plaintiffs' claims and class certification, as well as JKD's defenses. *Id.* ¶ 13. This informal exchange of information, combined with Plaintiffs' individual research, and the significant experience of Class Counsel, allowed counsel to fully evaluate the strengths and weaknesses of Plaintiffs' case, and to conduct informed settlement negotiations. Class Counsel ultimately participated in mediation and settlement discussions, achieving a favorable Settlement for the Settlement Class, and negotiated a comprehensive Agreement, which includes a robust Notice Program, well-crafted Notices and Claim Form, and a clear Claims Process. *Id.* ¶ 17.

Further, the "involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e); *see also Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary."); *Klein*, 705 F. Supp. 2d at 651 ("The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (quoting *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *3 (E.D. La. Aug. 28, 2009)).

Here, not only is the Settlement the result of arm's-length negotiations with the help of an experienced and respected mediator, as discussed above, but the matter of attorneys' fees was not discussed until after the Settlement Class benefits were reached. ECF No. 70-3 ¶ 16. Thus, there is no threat of fraud or collusion affecting the fairness of the settlement negotiations. *See In re Heartland Payment Sys.*, Inc., 851 F. Supp. 2d at 1064 (citing *In re Combustion, Inc.*, 968 F. Supp. 1116, 1127 (W.D. La. 1997) ("Further, testimony was presented that the matter of attorneys' fees was not negotiated in conjunction with the settlement agreements but left for separate determination by the Court.")).

Given the arm's-length negotiations that resulted in the proposed Settlement and that there is no evidence of fraud or collusion, the Settlement is fair, reasonable, and adequate under Rule 23(e)(2)(B) and the first *Reed* factor. *See* Fed. R. Civ. P. 23(e)(2)(B); *Reed*, 703 F.2d at 172.

## C. The Settlement Is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am*.,

*Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).

By negotiating a Settlement at an early stage of the litigation, the parties ensured that Class Members will receive the substantial benefits described above while avoiding the risks and potential pitfalls of prolonged litigation. While confident in the strength of their claims, Plaintiffs and Class Counsel are also pragmatic and recognize the risks inherent in litigation of a complex Data Breach case. SA ¶ 12; ECF No. 70-3 ¶ 28.

The risks, expense, complexity, and likely duration of further litigation support final approval of the Settlement. *Id.* Should the case proceed in litigation, Plaintiffs' claims could be dismissed or narrowed at the motion to dismiss stage, summary judgment, at trial, or on a subsequent appeal. Plaintiffs also face the risk that class certification could be denied or that key expert testimony could be excluded. *Id.* Defendant also contends Plaintiffs' damages models would be subject to challenge, as Defendant disputes whether Plaintiffs suffered any cognizable damages and whether any such damages are measurable on a class wide basis through a viable, common methodology. While Plaintiffs disagree with Defendant's contentions, Plaintiffs recognize each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal, which would result in zero recovery for the Class. *Id.* And even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *Id.*

In contrast, the Settlement provides immediate and substantial benefits to approximately 129,463 Class Members —similar to or better than the relief and benefits obtained in other data breach class actions—and on a much quicker timeline. For example, *Everetts v. Personal Touch*

*Holding Corp.*, No. 2:21-cv-02061-JMA-LGD (E.D.N.Y.), settled for $350,000 to resolve claims arising from a January 2021 ransomware attack that compromised data for approximately 316,845 patients and employees; *see also In re HealthEC LLC Data Breach Litig.*, No. 2:24-cv-00026-SDA (D.N.J.), in which HealthEC and several healthcare providers obtained preliminary approval of a $5.482 million class settlement covering roughly 1.67 million patients—about $3.28 per class member; and *Smith v. Specialty Networks LLC*, Nos. 1:24-cv-00286 *et al.* (E.D. Tenn.), where the court granted preliminary approval of a $2.6 million settlement for a December 2023 breach affecting approximately 395,866 individuals—about $6.57 per class member.

This case is settling in its early stages; if the Settlement is not finally approved, the parties will likely need to litigate through multiple dispositive motions, a motion for class certification, a potential motion to decertify the class, and multiple *Daubert* motions, among other things. That process would likely take years to resolve and involve expensive expert discovery. Yet there is no guarantee lengthy litigation and expensive discovery would lead to greater benefits for Class Members. Instead, there would be multiple inflection points at which the Class Members' claims could be narrowed or dismissed. Moreover, the parties will bear the cost of this litigation if it continues. An early resolution, before both sides spend significant sums on litigation costs, is in the best interest of the Settlement Class.

In short, "settling now avoids the risks and burdens of potentially protracted litigation." *Ayers*, 358 F.3d at 369. While Plaintiffs strongly believe in the merits of their case, they also understand the risks of continued litigation. As a recent federal court decision noted:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Plaintiffs also faced the risk that [defendant] would successfully oppose class certification, obtain summary judgment on one or more of their claims, or win at trial or on appeal. Also, the cost for [defendant] and

Plaintiffs to maintain the lawsuit would be high, given the amount of documentary evidence as well as the expert costs both parties would incur in the context of class certification, summary judgment, and trial. As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

*Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). Thus, the Settlement should be finally approved under Rule 23(e)(2)(C)(i) and the second *Reed* factor. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

### D.     The State of Litigation and the Available Discovery

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be approved under this factor even if the parties have not conducted much formal discovery." *Id.* (citations omitted). The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999). "The Court should consider all information which has been available to all parties." *DeHoyos v. Allstate Corp.*, 240 F.R.D. at 292 (W.D. Tex. Feb. 21, 2007).

Here, prior to mediation, JKD shared with Class Counsel information about the scope of the Data Breach, the number of class members, and Defendant's remedial efforts. ECF No. 70-3 ¶¶ 13–14. Drawing on their significant and substantial experience in other data-breach class action litigation, Class Counsel were able to determine the Settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. *Id.* ¶ 33. Because the parties "possess ample information with which to evaluate the merits of the competing positions," *Ayers*,

358 F.3d at 369, this factor also favors final approval of the proposed settlement. *See Reed*, 703 F.2d at 172.

E.    **The Settlement Terms Represent a Highly Favorable Compromise that Appropriately Balances the Merits of Plaintiffs' Claims and the Likelihood of Success with the Attendant Risks.**

When evaluating a proposed class action settlement, "the most important factor is the [fourth *Reed* factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172 (5th Cir. 1983)). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326–27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages); *DeHoyos*, 240 F.R.D. at 290 ("Because the laws of numerous states may be relevant to individual class member claims, plaintiffs would apparently face a further significant challenge to certifying the class outside the settlement context."); *Combustion*, 968 F. Supp. at 1128 ("On the other hand, Plaintiffs will have very serious legal and evidentiary hurdles to meet in order to get their case to the jury.").

Similarly, the fifth *Reed* factor—the range of possible recovery—concerns "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of

proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290–91. Both of these factors likewise weigh in favor of final approval.

This Settlement guarantees Class Members real relief for harms and protections from potential future fall-out from the Data Breach. The Settlement establishes an $875,000.00 Settlement Fund that will (a) automatically provide Minor Subclass Members up to 10 years of identity theft protection services; (b) provide SSN Subclass Members with two years of three-bureau credit monitoring services; (c) reimburse documented ordinary losses for Adult Subclass Members up to $2,500; (d) reimburse documented extraordinary losses for SSN Subclass Members up to $10,000; or (e) in lieu of claiming reimbursement for the documented losses listed above, gives Adult and SSN Subclass Members the opportunity to make a claim for a Pro Rata Cash Payment, which will be calculated as set forth in Section III(B)(2)(ii), *infra; see also* SA ¶ 78. The proposed Settlement requires Settlement Class Members to submit claims to the Settlement Administrator before the Claims Deadline. SA ¶ 20. Defendant will also pay for the cost of notice to the Settlement Class, as well as the costs of Settlement Administration, Service Awards to Plaintiffs, and attorneys' fees and costs that may be awarded by the Court. *Id*. ¶ 74.

As detailed, *supra*, the Settlement is similar or better to results obtained in other data breach cases. *Supra* § 5(B). In fact, the terms of this Settlement far exceed other data breach settlements. *See, e.g.*, *Baksh v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Chatelain v. C, L & W PLLC, d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (Tex. 42d Dist.

Ct. Taylor Cnty. Nov. 5, 2020) (data breach settlement providing 12-months of credit monitoring services and no expense reimbursements).

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that JKD asserts a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would have to immediately survive the pending motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the defenses JKD asserts—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

The inherent uncertainty in litigation—even where, as here, Plaintiffs are confident in their future success—presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. Even assuming success at trial, the case would likely continue with lengthy appeals. ECF No. 35-1 ¶ 24. The proposed Settlement avoids these uncertainties and provides the Settlement Class with immediate, meaningful, and certain monetary and injunctive relief. *Id.* Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. *Id.* Accordingly, the

Settlement should be finally approved under Rule 23(e)(2)(C)(i) and the fourth and fifth *Reed* factors. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

### F.  Class Counsel and Plaintiffs Believe that the Settlement Is in the Class's Best Interests.

All Plaintiffs and Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of Class Members, which is an important consideration in any class settlement analysis. ECF No. 70-3 ¶¶ 12, 33. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."); *see also Stott v. Capital Fin. Servs., Inc*., 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'") (quoting *Cotton*, 559 F.2d at 1330). Here, Settlement Class Counsel are all highly experienced in class action litigation and were well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. ECF No. 70-3 ¶ 10. Accordingly, the sixth *Reed* factor further supports approval of the proposed Settlement. *See Reed*, 703 F.2d at 172; *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'").

G.    **The Effectiveness of the Proposed Method of Distributing Relief to the Class Supports Approval of the Settlement.**

The Net Settlement Fund will be distributed pursuant to a proposed distribution process set out in Section III of the Settlement Agreement (ECF No. 70-2 ¶¶ 71–76) and preliminarily approved by this Court. No residual funds will revert to Defendant. *Id.* ¶ 57. Eligible claims will be paid electronically unless a Class Member requests to receive payment by written check. *Id.* ¶ 64. Settlement checks will be delivered by U.S. mail, first-class postage prepaid. *Id.* All payments will be made approximately 15 days after all appeals and other reviews. *Id.* ¶ 71(d). Given the simplified process for paying each Class Member and the fact that no funds will revert to Defendant, this factor weighs in favor of approval under Fed. R. Civ. P. 23(e)(2)(C)(ii).

H.    **There Is No Agreement Required To Be Identified Under Rule 23(E)(3).**

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There are no agreements between the Parties here except those set forth or explicitly referenced in the Settlement Agreement. This factor is not relevant to whether the Settlement should be finally approved.

I.    **The Settlement Treats Settlement Class Members Equitably Relative to Each Other.**

The final factor, Rule 23(e)(2)(D), considers whether Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provided for a notice plan that is designed to reach as many Class Members as possible and provided Class Members with direct mail notice of the Settlement. *See* Section III(E), *supra*. It also informed Class Members of their right to object to, or opt out of, the Settlement. *Id.* All Class Members were eligible to make a claim for the same amount of Out-of-Pocket expense reimbursements and lost time. Moreover, Class Members are treated equitably and eligible for different tiers of relied based on their data elements compromised

(SSNs or not), their status at the time of the Breach (adult or minor), and their damages suffered to date (reimbursement for out-of-pocket expenses). *See* Section II(D), *supra.*

And, while Plaintiffs each seek a $3,000 award for their services as Class Representatives, this award is only slightly higher than the $2,500 maximum that any individual Adult Subclass Member may claim in reimbursement for ordinary documented losses and is significantly less than the $10,000 available to SSN Subclass Members. The requested service award is justified given the substantial time and efforts undertaken by Plaintiffs to initiate, develop, and resolve this complex litigation on behalf of the Class, as well as the direct and meaningful benefits delivered to the Class by their work, and aligns with service awards regularly approved in similar class actions. ECF No. 70-3 ¶ 21. Thus, the Settlement treats Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D). *See* Fed. R. Civ. P. 23(e)(2)(D).

**J.     No Objections or Opt-Outs**

As of date, no Class Member submitted any objection to the Settlement, and no Class Member submitted a valid request for exclusion or opt-out. This factor thus weighs entirely in favor of final approval.

**VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF THE SETTLEMENT.**

The Court previously concluded that it was appropriate to preliminarily certify the Settlement Class for purposes of settlement. ECF No. 71. Nothing has occurred that would change the Court's previous determination that Plaintiffs satisfy the requirements under Rule 23. Fed. R. Civ. P. 23(a), (b)(3). Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance and superiority under Rule 23(a) and (b)(3). *See, e.g.*, *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *4 (E.D. Va. Sept. 13, 2022) (granting final approval

where "[n]othing has occurred that would alter the Court's initial determination"). Thus, the Court should finally certify the Settlement Class for settlement purposes.

## VII.   THE INDIVIDUAL AND DIRECT NOTICE PROVIDED TO CLASS MEMBERS IS THE BEST PRACTICABLE, MEETS DUE PROCESS CONSIDERATIONS, AND WEIGHS IN FAVOR OF FINAL APPROVAL.

Because an action maintained as a class suit under Rule 23 has *res judicata* effect on all members of the class, due process requires that notice of a proposed class settlement be provided to settlement class members. The notice provided must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). In addition, the notice must convey the required information and allow a reasonable time for those interested in making an appearance to do so. The mechanics of the notice process are left to the broad discretion of the court. Wright and A. Miller, *Federal Practice and Procedure,* at 237 (1972). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *ODonnell*, No. CV H-16-1414, 2019 WL 4224040, at *26. Instead, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id*. (citations and quotation marks omitted).

Here, Simpluris successfully provided notice via a combination of email and direct U.S. mail to 129,463 Class Members. Ex. A ¶¶ 5–11. This notice was the best practicable under the circumstances. It was clear, concise, and pointed each Class Member to the resources necessary for them to get additional information, review pleadings, make a claim, request exclusion, object, or to reach class counsel should they have any additional questions. *See* Ex. A. The Supreme Court of the United States has specifically held that individualized notice by mail to the last known address is the "best notice practicable" in a class action context. *Eisen v. Carlisle*

*& Jaquelin*, 417 U.S. 156, 174–77 (1974). In contrast with notice via publication, providing individualized mail notice to Class Members—coupled with the Settlement Administrator's efforts to search for, locate, and confirm current information for Class Members—*ensures* that Class Members are provided with the best practicable notice of the Settlement, and the opportunity to make a claim, opt-out, or object. Courts regularly approve the use of mail to directly notify potential class members of a class action settlement. *Petrovic v. Amoco Oil Co.*, 200 F.3D 1140, 1153 (8th Cir. 1999). The Settlement Website, toll-free phone number, and email contact form provided additional forums for Class Members to access information about the Settlement and relevant filings. The Notice program satisfies the requirements of both Rule 23 and due process.

As outlined above, the notice program here was a successful one, with a reach of 88.4%. Ex. A. ¶ 9. This successful notice program meets due process considerations and weighs in favor of final approval of this Settlement.

### A.    The Court Should Appoint Undersigned Counsel as Class Counsel and the Named Plaintiffs as Class Representatives.

The Court preliminarily appointed Danielle L. Perry of Mason LLP and Tyler J. Bean of Siri & Glimstad LLP as Class Counsel. Upon the Court's certification of the Settlement Class for purposes of settlement, Plaintiffs request that these counsel be appointed Class Counsel for the Settlement Class under Rule 23(g)(1). In addition, because Plaintiffs Latris Jolla, Carliyah Bracken, Steven Rhodes, and Kaelyn Franklin have diligently and successfully fulfilled their responsibilities as the representatives of the class as initially certified, the Court should appoint them as the Class Representatives.

### VIII.   CONCLUSION

Class Counsel, with the help of Plaintiffs, obtained significant benefits to Class Members during a time where the law surrounding data breaches is evolving and remains uncertain. The

Class Members were provided direct and individual notice of the Settlement and given additional resources by which they could and did obtain more information about the Settlement Agreement. No Class Members has objected to either the Settlement or to Plaintiffs' request for attorneys' fees, costs, and service awards. For these reasons (and those set forth in Plaintiffs' preliminary approval and fee motions (ECF Nos. 70, 72)) and because the Settlement is fair, reasonable, and adequate, Plaintiffs request this Court grant their motion for final approval following the Fairness Hearing currently set for August 7, 2025, and grant the motion for attorneys' fees, costs, and litigation expenses and service awards (ECF No. 72).

Dated: July 24, 2025                              Respectfully submitted,

                                                  */s/ Danielle L. Perry*
                                                  Danielle L. Perry (*admitted pro hac vice*)
                                                  **MASON LLP**
                                                  5335 Wisconsin Avenue, NW, Suite 640
                                                  Washington, DC 20015
                                                  Tel: (202) 429-2290
                                                  Email: dperry@masonllp.com

                                                  M. Palmer Lambert (#33228)
                                                  **PENDLEY, BAUDIN & COFFIN**
                                                  1100 Poydras Street, Suite 3525
                                                  New Orleans, Louisiana 70163-2225
                                                  Tel: (504) 355-0086
                                                  Fax: (504) 355-0089
                                                  Email: plambert@pbclawfirm.com

                                                  Tyler J. Bean (*admitted pro hac vice*)
                                                  **SIRI & GLIMSTAD LLP**
                                                  745 Fifth Avenue, Suite 500
                                                  New York, New York 10151
                                                  Tel: (212) 532-1091
                                                  Email: tbean@sirillp.com

                                                  *Counsel for Plaintiffs and the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 24th day of July, 2025, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the Middle District of Louisiana via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

*/s/ Danielle L. Perry*
Danielle L. Perry (*admitted pro hac vice*)